## SAWYER v. STRAUSS.

(Court of Appeals of District of Columbia, Submitted January 14, 1927. Decided March 7, 1927. Petition for rehearing denied March 26, 1927.)

### No. 1910.

1. Patents ⊜91(4)—Evidence held to show junior party entitled to priority in invention of yielding barrier for roadways at railroad crossings.

In interference proceeding involving invention of yielding barrier adapted to extending across roadways at railroad crossings, evidence *held* to show junior party entitled to priority.

2. Patents ⊜106(2)—Party to interference proceeding should not be allowed by amendment to put back his own date after seeing his adversary's date, unless justice plainly requires it.

It is a suspicious circumstance when a party to an interference, after seeing his adversary's date, attempts to put back his own date as set out in his preliminary statement, and an amendment in such a matter should not be allowed, unless the interests of justice plainly demand it.

Appeal from the Assistant Commissioner of Patents.

Interference proceeding between Joseph B. Strauss, senior party, and Emerson D. Sawyer, junior party. From a decision of the Commissioner of Patents, awarding priority to the former, the latter appeals. Reversed, and priority awarded to junior party.

Joshua R. H. Potts, of Chicago, Ill., for appellant.

D. M. Carter, of Chicago, Ill., and J. S. Barker, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is an appeal from a decision of an Assistant Commissioner of Patents, in an interference proceeding, awarding priority to the senior party, Strauss.

[1] The invention involves a yielding barrier adapted to extend across roadways at railroad crossings, bridges, etc., to stop automobiles and other vehicles, and is equipped with means for relieving the strain incident to impact. Sawyer filed December 27, 1921. In his preliminary statement he alleged conception and disclosure in July and drawings on September 29, 1921. Strauss filed November 28, 1921 (a month earlier than Sawyer), and in his preliminary statement alleged conception in June and disclosure on the 1st day of October, 1921. The Examiner of Interferences, after an exhaustive review of the voluminous testimony, awarded priority to Sawyer. The Board of Examiners in Chief reversed that ruling, and the Assistant Commissioner, in a memorandum decision, adopted the views of the board.

Sawyer is an engineer of wide experience and particularly skilled in this art. On September 27 and 28, 1921, there were completed under his supervision eight yielding barriers by the Great Lakes Dredge & Dock Company, for the board of local improvements of the city of Chicago, at the Michigan Boulevard bridge. On those days these barriers, which were of a type different from that of the barrier involved in this interference, were successfully tested by the city engineers.

Mr. Strauss, also an engineer of wide experience, had caused to be constructed a yielding barrier, and on the 29th of September, 1921, he invited a number of engineers and others, including Mr. Sawyer, to witness its test, and arranged to have a special train carry his guests to the scene. The Examiner of Interferences found this test to have been a failure, and of it the board said: "It seems to have been generally conceded that the barrier failed." In returning to Chicago, Mr. Sawyer discussed with an engineer by the name of Sumner the causes of the failure, and Sawyer, according to the testimony of Sumner, had definite ideas as to how the barrier could be improved. While this discussion was taking place, a Mr. Kaufman, contracting engineer and assistant secretary of the Strauss Bascule Bridge Company, of which Mr. Strauss was president, stopped at the seat occupied by Sawyer and Sumner and engaged briefly in the discussion. As a result, he went into another car, saw Mr. Strauss, returned, and invited Sawyer to visit Strauss at his office the day following, or September 30, 1921. Sawyer accepted this invitation and kept the appointment. He says that he then disclosed the invention to Strauss, but Strauss denies this.

The Examiner of Interferences has found, and we concur in the finding, that Sawyer was in possession of the invention prior to the interview with Strauss, and that Strauss was not. It is not disputed that Sawyer was offered employment by Strauss as soon as he (Sawyer) had completed the work in which he then was engaged, and that his work was to be the development of barriers. On December 1, 1921, Sawyer reported to the Strauss Company and was tendered a written contract, as to the terms

of which there is a dispute. Sawyer testified that this contract, which was signed by the Strauss Company, contained a provision that he (Sawyer) would assign any invention covering yielding barriers he already had made; that he made a copy of the contract, and submitted the original and copy to an engineer by the name of Leyden, an entirely disinterested party, who witnessed the same. Mr. Leyden testified that Sawyer came to his office and showed him a contract which he proofread with Sawyer. He then was asked whether he would recognize that proposed contract, or offer of employment, if he saw it again, and replied in the affirmative. When further asked whether he would recognize the copy made from this proposed contract, he again replied in the affirmative. Thereupon he identified both original and copy. He then was asked how, when he proofread this copy with the original, the copy compared with the original, and answered: "The copy in no way differed from the original contract." Cross-examination failed in any way to change the testimony of this witness. The testimony of Mr. Sumner, who was present, is corroborative of that of Mr. Leyden.

Mr. Sawyer refused to sign this proposed contract, and a new contract, eliminating the objectionable provision, was prepared and signed. We are convinced that the original or proposed contract contained the provision testified to by Sawyer and his witnesses. In the first place, it is extremely improbable that such a writing could be the product of imagination, and, in the second place, Mr. Leyden is a gentleman of education and character, whose testimony is not to be discredited without reason. Moreover, the surrounding circumstances are consistent with the testimony. The importance of this item of testimony, of course, is that, if Strauss did not then believe that Sawyer had the invention, there was no necessity for obligating Sawyer to assign it.

[2] We already have said that Mr. Strauss is an engineer of experience. The record also discloses that he is experienced in patent matters. When, therefore, he prepared his preliminary statement, he must have appreciated fully the importance of accuracy. He had every reason to believe that Sawyer would claim the same invention and that the element of time would be controlling. On oath he stated that he disclosed the invention on the 1st day of October, 1921. Upon the taking of testimony he served notice that he would move to amend his preliminary statement, but no such motion was filed, and, had

18 F..(2d)—11

it been, must have been denied in the circumstances. We have said that it is always a suspicious circumstance when a party to an interference, after seeing his adversary's dates, attempts to put back his own date as set out in his preliminary statement, and that an amendment upon so important a point should not be allowed unless the interests of justice plainly demand it. Parker v. Appert, 8 App. D. C. 270, 276; Hammond v. Basch, 24 App. D. C. 469, 473; Fowler v. McBerty, 27 App. D. C. 41, 44. In his preliminary statement Mr. Strauss alleges conception in June, but it is significant that when he made that statement he was unwilling to go farther and say that he then disclosed it to any one. In his testimony, however, he was quite certain that he had disclosed it to Kaufman.

Strauss introduced in evidence two sketches, Exhibits Nos. 18 and 23, dated, respectively, September 5 and 12, 1921, and signed by himself and a Mr. Hopkins, an engineer in the employ of Strauss Company at the time of the occurrences in question. These sketches disclose the invention, and Mr. Strauss testifies that they were made on the dates they bear. Mr. Hopkins, however, "could not reconcile the date with the sequence of events," because "my [his] recollection is that this particular problem was not discussed until after the tests made on the Austin avenue barrier on September 29, 1921." Mr. Hopkins further testified that he was in New York City from September 6 to 14, 1921, and therefore could not have signed the sketch in Chicago on September 12th. The blueprint, Exhibit No. 19, evidently made from Sketch Exhibit No. 18, bears no date and the original is claimed to have been lost. This is another very suspicious circumstance. If Strauss was in possession of the invention prior to the Austin avenue test on September 29th, the comment of the Examiner of Interferences on this phase of the case is pertinent:

"If Strauss had an adequate conception of the invention and ample faith in a physical embodiment of it as a triumph over the existing difficulties experienced by the continuous breaking of the operating chains, it is unexplained why a suitable device embracing his conception was not incorporated in the Austin avenue barrier, or in the Hudson county barrier testified about by Hopkins. Nor is it explained, if he already knew the proper remedy of the difficulty, why he sought to learn the details of the cure for the ills that the Austin avenue tests brought

out, which Sawyer had disclosed to Kaufman."

It also is inconceivable, if Strauss was in possession of the invention when he had the interview with Sawyer on September 30th, that he should have made no mention of it to Sawyer at that time. He not only failed to mention this to Sawyer, but, as we have seen, subsequently employed Sawyer to work on barriers. We think the conclusion irresistible that Strauss derived his knowledge of the invention from Sawyer, and for a detailed discussion of the evidence shall refer to the decision of the Examiner of Interferences. The decision is reversed, and priority awarded Sawyer.

Reversed.